No. 22-10960

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

In the Matter of Highland Capital Management, L.P.,

Debtor.

THE DUGABOY INVESTMENT TRUST,

APPELLANT

V.

HIGHLAND CAPITAL MANAGEMENT, L.P.,

APPELLEE

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS,
CASE NO. 3:21-CV-00261-L

ANSWERING BRIEF OF APPELLEE

PACHULSKI STANG ZIEHL
& JONES LLP
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
(310) 277-6910

HAYWARD PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

*Counsel for Appellee*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that:

(a)    There are no other debtors associated with this bankruptcy case other than Highland Capital Management L.P., and there are no publicly held corporations that own 10% or more of Appellee Highland Capital Management L.P., which is not a corporation and which is not a parent corporation;

(b)    That the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.    **Appellant:**
**The Dugaboy Investment Trust**

Counsel for the Dugaboy Investment Trust:

HELLER, DRAPER & HORN, L.L.C.
Douglas S. Draper
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300

2.    **Appellee (Debtor):**
**Highland Capital Management, L.P.**

Counsel for Appellee:

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910

PACHULSKI STANG ZIEHL & JONES LLP
John A. Morris
Gregory V. Demo
780 Third Avenue
34th Floor
New York NY 10017-2024
Tel: (212) 561-7700

HAYWARD PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

3.     **Litigation Trustee:**
       **Marc S. Kirschner**

Counsel for Litigation Trustee:

SIDLEY AUSTIN LLP
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue, Suite 2000
Dallas, Texas 74201
Tel: (214) 981-3300

SIDLEY AUSTIN LLP
Matthew A. Clemente
Dennis M. Twomey
Alyssa Russell
One South Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000

DOCS_SF:108263.21 36027/003

4. **Litigation Parties:**

**HarbourVest:**

HarbourVest 2017 Global Fund L.P.
HarbourVest 2017 Global AIF, L.P.
HarbourVest Dover Street IX Investment L.P.
HV International VIII Secondary L.P.
HarbourVest Skew Base AIF L.P.
HarbourVest Partners L.P.
One Financial Center
Boston, Massachusetts 02111

<u>Counsel</u>:

Erica S. Weisgerber
M. Natasha Labovitz
Daniel E. Stroik
Debevoise & Plimpton, LLP
919 Third Avenue
New York, New York 10020

**CLO Holdco, Ltd.**

<u>Counsel</u>:

Louis M. Phillips
Kelly Hart Pitre
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916

Hugh G. Connor II
Michael D. Anderson
Katherine T. Hopkins
Kelly Hart & Hallman
201 Main Street, Suite 2500
Fort Worth, Texas 76102

**HAYWARD PLLC**

*/s/Zachery Z Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Appellee*

iv

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully submits that oral argument is unwarranted and should not be permitted in the interest of preserving judicial resources and reducing the costs to the Debtor's economic constituents. The gravamen of this appeal is whether Appellant has bankruptcy appellate standing under this Court's long-standing "person aggrieved" standard. The "person aggrieved" standard has already been authoritatively decided by this Court countless times, including at least twice in published opinions in the last five years. Further, in addition to the District Court's Order, this Appellant has lost twice in its appeals of different Bankruptcy Court orders in which it unsuccessfully argued that it was a "person aggrieved" by those orders and that Appellant's unvested contingent trust beneficiary interest pursuant to the Debtor's Plan was sufficient to make Appellant a person aggrieved.[1] Whatever legal arguments bear on this single issue are adequately presented in the briefs filed in this appeal and other similar appeals pending in this Court. This Court's decision process would not be aided by oral argument.

---

[1] *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 U.S. Dist. LEXIS 155600, at \*9 (N.D. Tex. Aug. 8, 2022).) (Scholer, J.) (dismissing Appellant's appeal for lack of standing on the basis that it was not a person aggrieved and reasoning that Appellant did not demonstrate requisite causal nexus between order being appealed and purported interest in potential future recovery under Highland's plan of reorganization) (*appeal docketed*, No. 22-22-10960 (5th Cir. Oct. 5, 2022); *Highland Cap. Mgmt. Fund Adv. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 U.S. Dist. LEXIS 15648, at \*7 (N.D. Tex. Jan. 28, 2022) (Fitzwater, J.) (holding the Appellant lacked standing to appeal bankruptcy court order authorizing the creation of an indemnity subtrust and the entry into a related agreement because it was not a "person aggrieved").

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF ISSUES ............................................................1

II.   STANDARD OF REVIEW ...........................................................1

III.  STATEMENT OF THE CASE .......................................................2

    A.   Background to Appellant ....................................................2

    B.   Background to the HarbourVest Claims, the Settlement
        Approval Order, and this Appeal ......................................3

IV.  SUMMARY OF ARGUMENT.......................................................5

V.   ARGUMENT................................................................................9

    A.   Appellant Lacks Standing to Bring this Appeal..................9

        (i)    *Appellant Is Not a "Person Aggrieved" under this
             Circuit's Long-Standing Rules Governing Bankruptcy
             Appeals*........................................................................9

        (ii)   *Bankruptcy Code Section 1109(b) Does Not Provide
             Appellant with Statutory Bankruptcy Appellate
             Standing*.....................................................................14

        (iii)  *Appellant No Longer Holds Any Claims Against the
             Debtor and Cannot Rely on the Former Existence of
             Disallowed Claims as a Basis for Bankruptcy Standing*.......17

    B.   The HCLOF Interests Provided Material Value to the Estate ...........19

VI.  CONCLUSION...........................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1996) ................................................................18

*Charitable DAF Fund v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
  No. 21-03067 (Bankr. N.D. Tex. Sept. 29, 2021) ................................5

*Chevron, U.S.A. v. Traillour Oil Co.*,
  987 F.2d 1138 (5th Cir. 1993) ................................................18

*Conn. Gen. Life Ins. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*,
  68 F.3d 914 (5th Cir. 1995) ...................................................2

*Cousins Int'l Food Corp. v. Vidal*,
  565 B.R. 450 (BAP 1st Cir. 2017) ...........................................16

*Dean v. Seidel (In re Dean)*,
  18 F.4th 842 (5th Cir. 2021) .............................................. 6, 12

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
  2022 U.S. Dist. LEXIS 155600 (N.D. Tex. Aug. 8, 2022) ................ passim

*Ergo Sci. v. Martin*,
  73 F.3d 595 (5th Cir. 1996) ..................................................19

*Fortune Nat'l Res. Corp. v. United States DOI*,
  806 F.3d 363 (5th Cir. 2015) .................................................12

*Furlough v. Cage (In re Technicool Sys.)*,
  896 F.3d 382 (5th Cir. 2018) ............................................ passim

*Gibbs & Bruns LLP v. Coho Energy (In re Coho Energy)*,
  395 F.3d 198 (5th Cir. 2004) ......................................... 6, 8, 9, 19

*Goldin v. Bartholow*,
  166 F.3d 710 (5th Cir. 1999) ............................................. 8, 18

*Greater Se. Cmty. Hosp. Found. v. Potter*,
  586 F.3d 1 (D.C. Cir. 2009) ..................................................16

*Hall v. Beals*,
  396 U.S. 45 (1969) ...........................................................18

*Highland Cap. Mgmt. Fund Adv. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),*
  2022 U.S. Dist. LEXIS 15648 (N.D. Tex. Jan. 28, 2022)..................................v, 7

*Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),*
  2023 U.S. App. LEXIS 650 (5th Cir. Jan. 11, 2023) ............................................3

*Hogan v. Miss. Univ. for Women,*
  646 F.2d 1116 (5th Cir. 1981) ..............................................................................18

*In re Cajun Elec. Power Co-op,*
  69 F.3d 746 (5th Cir. 1995)....................................................................................6

*In re Highland Cap. Mgmt., L.P.,*
  No. 19-34054-sgj11, Docket No. 1875-1 (Bankr. N.D. Tex. Feb. 1, 2021) ........21

*In re Hutchison,*
  2002 Bankr. LEXIS 2014 (Bankr. N.D. Tex. Jan. 18, 2002)...............................20

*In re PWS Holding Corp.,*
  228 F.3d 224 (3d Cir. 2000) .................................................................................16

*In re Salant Corp.,*
  176 B.R. 131 (S.D.N.Y. 1994) .............................................................................16

*In re Thomas,*
  2020 Bankr. LEXIS 1650 (Bankr. W.D. Tenn. May 8, 2020) ............................20

*In re Wolf,*
  595 B.R. 735 (Bankr. N.D. Ill. 2018) ..................................................................20

*Int'l Trade Admin. v. Rennselaer Polytechnic Inst.,*
  936 F.2d, 744 (2d Cir. 1991) ...............................................................................16

*Kane v Johns-Manville Corp.,*
  843 F.2d 636 (2d Cir. 1988) .................................................................................16

*Lopez v. Behles (In re Am. Ready Mix),*
  14 F.3d 1497 (10th Cir. 1994)..............................................................................16

*Midwest Media Prop. v. Symmes Twp.,*
  503 F.3d 456 (6th Cir. 2007) ...............................................................................18

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),*
  48 F.4th 419 (5th Cir. 2022)...............................................................................2, 3

DOCS_SF:108263.21 36027/003

*NexPoint Advisors, L.P.. v. Pachulski Stang Ziehl & Jones LLP (In re Highland Cap. Mgmt., L.P.)*,
   No. 2022 U.S. Dist. LEXIS 83142 (N.D. Tex. May 9, 2022)................................7

*Reed v. Genter (In re Genter)*,
   2021 Bankr. LEXIS 720 (Bankr. N.D. Tex. Mar. 22, 2021)................................20

*S. Pac. Trans. Co. v. Voluntary Purchasing Grp.*,
   227 B.R. 788 (E.D. Tex. 1998) ...................................................... 16, 17

*Sears v. Badami (In re AFY, Inc.)*,
   2011 U.S. Dist. LEXIS 50742 (D. Neb. May 11, 2011) ......................................16

*United States Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) ............................................................18

## STATUTES

11 U.S.C § 1109 ...................................................................... passim

11 U.S.C. § 363(b)(1)................................................................20

28 U.S.C. § 1334(e)(1)...............................................................20

28 U.S.C. § 158(a) ...................................................................1

## OTHER AUTHORITIES

5 Collier on Bankruptcy
   ¶ 1109.08 (16th ed. 2022).......................................................15

DOCS_SF:108263.21 36027/003

## I.    <u>STATEMENT OF ISSUES</u>[2]

Appellee agrees with Appellant's first issue on appeal: Whether the District Court[3] properly dismissed the appeal of the Settlement Approval Order on the basis that Appellant lacks standing to prosecute this appeal because it is not a "person aggrieved" by the Settlement Approval Order. This Court should affirm because the District Court properly interpreted this Circuit's decades-old "person aggrieved" standard for appellate standing and appropriately held that, under that standard, Appellant was not a "person aggrieved" by the Settlement Approval Order.

Appellee also agrees with Appellant that if this Court determines Appellant has bankruptcy appellate standing, it should remand to the District Court to address the merits.

## II.    <u>STANDARD OF REVIEW</u>

Whether Appellant has standing is a question of law that is reviewed *de novo*.[4]

---

[2] Unless otherwise defined, all capitalized terms used in this brief have the meanings ascribed in the *Opening Brief of Appellant The Dugaboy Investment Trust* (the "<u>Opening Brief</u>") [Document 00516569245]. Citations to "ROA" are to the Record on Appeal.

[3] "<u>District Court</u>" means the United States District Court for the Northern District of Texas, Dallas Division (Hon. Sam A. Lindsay), sitting as a bankruptcy appellate court pursuant to 28 U.S.C. § 158(a).

[4] *Furlough v. Cage (In re Technicool Sys.)*, 896 F.3d 382, 385 (5th Cir. 2018) ("Standing is a question of law that we review *de novo*").

Whether the Settlement Approval Order should have been approved (Appellant's third issue) is reviewed for abuse of discretion.[5]

## III.   <u>STATEMENT OF THE CASE</u>

Appellee generally agrees with the background facts set forth in Appellant's Opening Brief,[6] except for certain corrections set forth below.

### A.     Background to Appellant

Appellant is a so-called family "trust" controlled by James Dondero (Highland's founder and ousted former CEO) and is one of many entities under Dondero's control.[7] The Dondero entities, including Appellant, have appealed more than twenty Bankruptcy Court orders plus one direct appeal of the Bankruptcy Court's Confirmation Order from the Bankruptcy Court to this Court. The reviewing district courts have ruled on or dismissed (for lack of standing) eleven of the appeals, with the Dondero entities losing each time (save one that was remanded to the Bankruptcy Court for further application of one of the prongs required for judicial estoppel). Dondero and his controlled entities have appealed eight of those appellate

---

[5] *Conn. Gen. Life Ins. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *Dugaboy Inv. Tr. v. Highland Cap. Mgmt.*, 2022 U.S. Dist. LEXIS 172351, at *9 (N.D. Tex. Sept. 22, 2022).

[6] *See* Opening Brief at 6-8.

[7] *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 424-25 (5th Cir. 2022).

losses to this Court including this appeal.[8] This Court has already ruled on two of these appeals.[9]

Appellant held a 0.1866% prebankruptcy limited partnership interest in the Debtor before those interests were cancelled under the terms of the Debtor's Plan. Appellant now only has an unvested, contingent, and subordinated interest in the Highland Claimant Trust established by the Plan.

### B.    Background to the HarbourVest Claims, the Settlement Approval Order, and this Appeal

In late 2017, HarbourVest invested approximately $80 million (the "HarbourVest Investment") to acquire a 49.48% ownership interest in an entity then known as Acis Loan Funding, Ltd. ("ALF"). As discussed below, ALF subsequently changed its name to Highland CLO Funding, Ltd. ("HCLOF") as part of Dondero's efforts to strip Acis Capital Management, L.P. ("Acis") of its assets and leave it judgment-proof.[10] ALF/HCLOF is a Guernsey-based investment vehicle managed

---

[8] *NexPoint Advisors, L.P. v. Highland Cap. Mgmt.*, No. 21-90011; *Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt. L.P.*, No. 22-10189; *NexPoint Advisors, L.P. v. Pachulski Stang Ziehl & Jones LLP*, No. 22-10575; *Dugaboy Inv. Tr. v. Highland Cap. Mgmt.*, No. 22-10831; *Dondero v. Highland Cap. Mgmt.*, No. 22-10889; *Dugaboy Inv. Tr. v. Highland Cap. Mgmt.*, No. 22-10960; *Dugaboy Inv. Tr. v. Highland Cap. Mgmt.*, No. 22-10983; *Charitable DAF Fund v. Highland Cap. Mgmt.*, No. 22-11036.

[9] *See NexPoint*, 48 F.4th 419 (affirming Bankruptcy Court's order confirming Debtor's Plan except with respect to the exculpation of certain non-Debtor entities); *petitions for cert. filed*, No. 22-631 (filed Jan. 5, 2023), No. __-____ (filed Jan. 16, 2023); *Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2023 U.S. App. LEXIS 650 (5th Cir. Jan. 11, 2023) (affirming District Court's affirmance of Bankruptcy Court order authorizing the creation of an indemnity subtrust).

[10] ROA 3731.

by its board of directors. ALF/HCLOF's portfolio manager at the time of the HarbourVest Investment was Acis, a wholly-owned Highland subsidiary that managed the ALF investments under a portfolio management agreement (the "<u>ALF PMA</u>").[11]

On April 8, 2020, HarbourVest filed six proofs of claim against Highland (Claim Nos. 143, 147, 149, 150, 153, and 154, referenced collectively as the "<u>HarbourVest Claims</u>")[12] seeking in excess of $300 million from Highland's estate based on allegations that Highland had engaged in fraud. Appellee settled the HarbourVest Claims by providing HarbourVest a general unsecured claim of $45 million and a subordinated claim of $35 million.[13] As part of the settlement, HarbourVest agreed to transfer its interests in HCLOF to the Debtor or its nominee, thereby effectively rescinding the HarbourVest Investment.[14]

---

[11] *Id.*

[12] ROA 2642-2695.

[13] ROA 21-24 and 27.

[14] ROA 24.

The Bankruptcy Court approved the Settlement[15] over the objections of (a) Dondero;[16] (b) Dondero's family trusts, Appellant and Get Good[17]; and (c) one of Dondero's "charitable" organizations, CLO HoldCo, Ltd. ("<u>CLOH</u>").[18]

Appellant appealed the Settlement Approval Order to the District Court. On September 26, 2022, the District Court entered its order dismissing the appeal of the Settlement Approval Order[19] reasoning that "Dugaboy's indirect interest in the [Settlement Approval Order] and prospect of harm is speculative and insufficient to meet the strict requirements for bankruptcy standing."[20]

## IV.    SUMMARY OF ARGUMENT

With respect to Issue 1 (Appellant's lack of standing), Appellant continues to ignore this Court's long-standing jurisprudence governing appeals of bankruptcy

---

[15] ROA 712-24.

[16] ROA 830-44.

[17] ROA 845-54.

[18] ROA 855-66. After reviewing the various agreements, Appellee's papers, and applicable law, CLOH withdrew its objection to the Settlement on the record. ROA 2470. Yet CLOH subsequently filed suit against Appellee and Seery in the District Court alleging Appellee and Seery violated their alleged duties to CLOH and its parent by entering into the Settlement. *Charitable DAF Fund v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, No. 21-03067 (Bankr. N.D. Tex. Sept. 29, 2021).

[19] ROA 2612-18.

[20] ROA 3878.

court orders.[21] Consistent with the standard applied in other circuits nationwide, the Fifth Circuit applies the "person aggrieved" standard, which requires a higher causal nexus between act and injury and requires an appellant to show that it is "'directly and adversely affected pecuniarily by the order of the bankruptcy court.'"[22]

Appellant offers three arguments to convince the Court that it had standing to appeal the Settlement Approval Order to the District Court.

***First***, Appellant argues that it was directly and adversely affected pecuniarily by the Settlement Approval Order because that settlement "decreased the funds available for payments under the Plan, including to former equity holders." However, entry of the Settlement Approval Order did not "directly affect [Appellant's] wallet[]."[23] There is no direct adverse pecuniary effect on Appellant's wallet. Any recovery on account of Appellant's former junior equity interest in the Debtor is entirely speculative and unknown regardless of the amount of HarbourVest's claims, given the senior claims and senior equity interests that would need to be fully paid before Appellant received anything. There is nothing in the

---

[21] Appellant seems to argue—without authority—that the "person aggrieved" standard applied by this Court for several decades is not applicable because "Dugaboy does not concede that this test remains applicable under the Bankruptcy Code." Opening Brief at 13. This bizarre argument flies in the face of binding Fifth Circuit precedent published on this issue both before and after the enactment of the Bankruptcy Code.

[22] *Gibbs & Bruns LLP v. Coho Energy (In re Coho Energy)*, 395 F.3d 198, 202-03 (5th Cir. 2004) (quoting *In re Cajun Elec. Power Co-op*, 69 F.3d 746, 749 (5th Cir. 1995)).

[23] *Dean v. Seidel (In re Dean)*, 18 F.4th 842, 844 (5th Cir. 2021).

record of this appeal demonstrating that Appellant is "in the money," has a vested claim, or is entitled to any distributions under the Plan. Any recovery on account of Appellant's former junior equity interest in the Debtor is entirely speculative regardless of the ultimate allowed amount of the HarbourVest Claims.

**Second**, Appellant argues that being a "party in interest" to *appear* in matters pending in the bankruptcy court in chapter 11 cases provided under Bankruptcy Code section 1109(b) provides Appellant with statutory *standing* to appeal orders. However, section 1109(b) does not address appellate standing. The litany of reported decisions examining the lack of interplay between Bankruptcy Code section 1109(b) and the "person aggrieved" standard have concluded that section 1109(b) does not provide an independent basis to confer appellate standing.[24]

**Third**, Appellant argues that it can be a "person aggrieved" because it had disputed claims against the Debtor during the pendency of its appeal of the Settlement Approval Order in the District Court and, as such, can continue to pursue its appeal notwithstanding the subsequent dismissal of all such claims.[25] This is also

---

[24] *See also NexPoint Advisors, L.P. v. Pachulski Stang Ziehl & Jones LLP (In re Highland Cap. Mgmt., L.P.)*, No. 2022 U.S. Dist. LEXIS 83142, at *14 (N.D. Tex. May 9, 2022) (Kinkeade, J.) (reasoning that section 1109(b) does not confer appellate standing and "even if Appellant is a 'party in interest' that can 'appear and be heard' on its objections to professional fees per § 330, that still does mean it has standing as a person aggrieved."). *See also Highland Cap. Mgmt. Fund Advisors, L.P.*, 2022 U.S. Dist. LEXIS 15648 at *3-4 (not examining or addressing the applicability of section 1109(b), but holding Appellant had no standing to appeal bankruptcy court order authorizing and the creation of an indemnity subtrust and the entry into related agreement because it was not a "person aggrieved").

[25] Opening Brief at 26.

incorrect. Even if Appellant's former claims were sufficient to make it a "person aggrieved" when it commenced the appeal, the subsequent loss of those claims makes this appeal moot.[26] Standing must be assessed at every stage of a proceeding,[27] and the lack of standing at any time will moot an appeal even if standing existed at an earlier point under the Constitution's justiciability requirement (which is the basis for the Fifth Circuit's decisions limiting the ambit of bankruptcy appeals) and constitutional mootness.

With respect to Issue 2, because the District Court dismissed the appeal on bankruptcy standing grounds, it did not address the merits of the Settlement Order. Accordingly, if this Court reverses the District Court's order finding that Appellant lacks bankruptcy appellate standing, it should remand the matter for review on the merits.

Finally, Appellant briefly, but incorrectly, argues the merits of its appeal even though the only issue currently before this Court is Appellant's standing. Specifically, Appellant argues that the Bankruptcy Court improperly authorized the transfer of the HCLOF interests to a wholly-owned and controlled Highland subsidiary, thus moving those interests outside of the Bankruptcy Court's

---

[26] *See Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 U.S. Dist. LEXIS 155600, at *7-8 (N.D. Tex. Aug. 8, 2022) (Sholer, J.); *see also Coho*, 395 F.3d at 203 ("A remote possibility does not constitute injury under *Rohm's* 'person aggrieved' test).

[27] *See, e.g., Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999).

jurisdiction and (somehow) depriving the estate of their value. As the Bankruptcy Court ruled, the equity interest was property of the estate under Bankruptcy Code section 541(a), disposition of which required compliance with Bankruptcy Code section 363. Nor was the "value" of the HCLOF interests to the estate impacted by the interests being held in a wholly-owned subsidiary.

## V.     **ARGUMENT**

### A.     **Appellant Lacks Standing to Bring this Appeal**

(i)     ***Appellant Is Not a "Person Aggrieved" under this Circuit's Long-Standing Rules Governing Bankruptcy Appeals***

Appellant essentially ignores the decades-long and unbroken string of case law in this Circuit governing standing to appeal bankruptcy court orders. Standing to appeal a bankruptcy court decision is governed by the "person aggrieved" test, which requires a showing that the appellant was aggrieved by the order being challenged,[28] and is an "even more exacting standard than traditional constitutional standing."[29] In other words, "[b]ecause bankruptcy cases typically affect numerous parties, the 'person aggrieved' test demands a higher causal nexus between act and injury …."[30]

---

[28] *Technicool*, 896 F.3d at 385.

[29] *Coho*, 395 F.3d at 202.

[30] *Id.* at 202-03.

This Court has repeatedly held that appellate standing in bankruptcy cases is necessarily limited because the proceedings held in the context of a single bankruptcy case make them particularly susceptible to an avalanche of appeals by an array of parties:

> Bankruptcy courts are not Article III creatures bound by traditional standing requirements. But that does not mean disgruntled litigants may appeal every bankruptcy court order willy-nilly. Quite the contrary. Bankruptcy cases often involve numerous parties with conflicting and overlapping interests. Allowing each and every party to appeal each and every order would clog up the system and bog down the courts. Given the specter of such sclerotic litigation, standing to appeal a bankruptcy court order is, of necessity, quite limited.[31]

In *Technicool*, the debtor's equity holder, Robert Furlough, opposed the debtor's employment of special counsel to pursue litigation. After the bankruptcy court overruled his objection, Furlough appealed, first to the district court and, when he did not prevail there, to this Court.[32] This Court also affirmed the bankruptcy court's decision, explicitly rejecting Furlough's argument that additional administrative expenses for special counsel would make a recovery on his equity less likely. Significantly, this Court further held that some theoretical possibility relating to an equity interest did not accord him standing to appeal: "This speculative prospect of harm is far from a direct, adverse, pecuniary hit. Furlough must clear a higher standing hurdle: *The order must burden his pocket before he burdens a*

---

[31] *Technicool*, 896 F.3d at 385 (citation omitted).

[32] *Id.* at 384-85.

*docket.*"[33] This Court reasoned that the bankruptcy court order that was the subject of Furlough's appeal—the appointment of a professional under Bankruptcy Code section 327(a)—did not *directly* affect Furlough's pecuniary interests, despite his equity interest. In other words, the fact that Furlough "feels grieved by [the professional's] appointment does not make him a 'person aggrieved' for purposes of bankruptcy standing."[34]

Appellant concedes that the "person aggrieved" standard "is designed to curb the potential for a multitude of appeals of questionable interest that would 'clog up the system and bog down the courts' given the potentially large number of parties in a bankruptcy proceeding."[35] Yet, Appellant—who along with the Dondero entities have already appealed ***over twenty orders*** entered by the Bankruptcy Court (eight of which are currently pending in this Court)—has clogged up the dockets of the District Court and this Court for the last few years. As Appellant acknowledges, this Court has specifically cited to this type of behavior as a reason why the "person aggrieved" test is necessary:

> In bankruptcy litigation, the mishmash of multiple parties and multiple claims can render things labyrinthine, to say the least. *To dissuade umpteen appeals raising umpteen issues*, courts impose a stringent-yet-

---

[33] *Id.* at 386 (emphasis added).

[34] *Id.*

[35] Opening Brief at 12-13 (quoting *Technicool*, 896 F.3d at 385).

prudent standing requirement: *Only those directly, adversely, and financially impacted by a bankruptcy order* may appeal it.[36]

In 2022, this Court validated and reaffirmed this approach in *In re Dean*,[37] explaining that the "person aggrieved test … is 'an even more exacting standard than traditional constitutional standing'" and requires "'that the *order* of the bankruptcy court must directly and adversely affect the appellant pecuniarily.'"[38] This Court stated simply, "Appellants cannot demonstrate bankruptcy standing when the court order to which they are objecting does not directly affect their wallets."[39]

As was the case in *Technicool*, Appellant is a former equity holder (with just a 0.1866% interest) appealing a bankruptcy court order on the grounds that it "it is likely that Dugaboy would realize a recovery … because there would be $80 million more that would be available to satisfy creditors."[40] However, as was also the case in *Technicool*, this is rank speculation. First, Appellant is not *directly* financially impacted by the Settlement Approval Order. Appellant's unvested, contingent, subordinated interest is a Class 11 claim under the Plan making Appellant a member

---

[36] *Technicool,* 896 F.3d at 384 (emphasis added).

[37] 18 F.4th 842.

[38] *Id.* at 844 (quoting *Fortune Nat'l Res. Corp. v. United States DOI*, 806 F.3d 363, 366, 367 (5th Cir. 2015)).

[39] *Id.*

[40] Opening Brief at 28. Of course, if there was "$80 million more that would be available to satisfy creditors," then (necessarily) (a) there would be no settlement, (b) the HarbourVest's Claims (seeking in excess of $300 million) would be unresolved, and (c) the Debtor would not have the economic benefit of HarbourVest's interests in HCLOF that it acquired as part of the settlement. Layering speculation on top of speculation does not transform Appellant into a "person aggrieved."

of the very last class to receive a hypothetical distribution even under the most optimistic scenarios.[41] Before Appellant can receive a distribution, all allowed, unsecured claims in Class 8 and Class 9 (including HarbourVest's undetermined claim(s) if the Settlement Approval Order were reversed) must be paid in full, inclusive of interest. After that, any surplus distributions would flow to Class 10, which represents a preferred class of prepetition equity (Class B/C) that is senior to Appellant's interest (Class A). Only then would Appellant be entitled to receive a distribution on its former 0.1866% junior equity interest in the Debtor. Thus, the alleged harm to Appellant on the basis of the amount of the HarbourVest Claims fixed by the Settlement Approval Order is entirely speculative because there is nothing in the record of this appeal demonstrating that Appellant is entitled to any distributions under the Plan regardless of the ultimate allowed amount the HarbourVest Claims.

Unsurprisingly, the District Court also rejected Appellant's arguments and concluded that:

> Notwithstanding Dugaboy's attempt at distinguishing *Technicool*, the court, for similar reasons, agrees with Highland Capital that Dugaboy's indirect interest in approving the HarbourVest Settlement and prospect of harm is speculative and insufficient to meet the strict requirements for bankruptcy standing.[42]

---

[41] *Technicool*, 896 F.3d at 384.

[42] ROA 3878.

As was the case in *Technicool*, Appellant cannot demonstrate that it was directly and adversely affected pecuniarily by the Settlement Approval Order.[43] Appellant's prognosticative theories of recovery based on its out of the money and unvested, contingent, and subordinated interests in the Claimant Trust and irrespective of the allowed amount of the HarbourVest Claims are exactly the type of "hypothetical and indirect" injury that the Fifth Circuit has repeatedly found insufficient to confer standing.

### (ii)     *Bankruptcy Code Section 1109(b) Does Not Provide Appellant with Statutory Bankruptcy Appellate Standing*

Section 1109(b) of the Bankruptcy Code does not provide Appellant with the "statutory standing" it now asserts. While section 1109(b) allows a "party in interest" to appear on bankruptcy matters in the bankruptcy court, it does *not* transform a party in interest into a person aggrieved for appellate standing purposes in accordance with Circuit precedent on this issue. Section 1109(b) gives certain parties the right "to appear and to be heard on any issue in a case" under the Bankruptcy Code. It does not confer statutory appellate standing to appeal bankruptcy court orders and says nothing about whether an entity is a "person aggrieved."

Appellant conflates the concept of this Court's "person aggrieved" requirement with the ability of certain parties "to appear and to be heard" on

---

[43] ROA 3877-78.

bankruptcy matters in the bankruptcy court.[44] As courts considering this argument have concluded, these are distinct and separate legal constructs that Appellant has fused together to concoct a basis for standing where none otherwise exists.[45]

Although, as the District Court noted, this Circuit has apparently not squarely addressed the applicability of Bankruptcy Code section 1109(b) to appellate standing, many courts have held that being a "party in interest" to appear in certain bankruptcy proceedings is completely distinct from whether a party is a "person aggrieved and, consequently, does not provide any basis for statutory appellate

---

[44] "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holder's committee, a creditor, an equity security holder, or an any indenture trustee may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C § 1109 (b).

[45] "Although Bankruptcy Code section 1109 speaks broadly of the right of a party in interest to raise and to appear and be heard on any issue in a chapter 11 case, *the section is silent on the subject of a party's ability to take an appeal from an adverse decision, other than to expressly prohibit the Securities and Exchange Commission from taking an appeal.* … [F]or a person to be a proper party to take an appeal, one must be a 'person aggrieved' by the outcome of a particular proceeding." 5 COLLIER ON BANKRUPTCY ¶ 1109.08 (16th ed. 2022) (emphasis added).

standing."[46] The only case cited by Appellant to support its argument that Bankruptcy Code section 1109(b) confers standing to pursue this Appeal is the twenty-four-year-old district court case of *Southern Pacific Transport Co. v. Voluntary Purchasing Group*.[47] But *Southern Pacific* does not stand for the proposition argued by Appellant. The two separate issues decided in *Southern Pacific* were first, whether a statutory creditors' committee was a "person aggrieved" with standing to oppose the appeal (even though it was not a named appellee) and second, after concluding that the committee was a "person aggrieved," whether section 1109(b) *prevented* the committee from appearing and being heard as an

---

[46] *See Lopez v. Behles (In re Am. Ready Mix)*, 14 F.3d 1497, 1502 (10th Cir. 1994) ("[Section] 1109(b) expands the right to be heard [in a Chapter 11 proceeding] to be a wider class than those who qualify under the 'person aggrieved' standard." Section 1109(b) says nothing about a party's standing to appeal.") (quoting *Int'l Trade Admin. v. Rennselaer Polytechnic Inst.*, 936 F.2d, 744, 747 (2d Cir. 1991)); *Sears v. Badami (In re AFY, Inc.)*, 2011 U.S. Dist. LEXIS 50742, at *8 (D. Neb. May 11, 2011) ("Section 1109(b), which provides that '[a] party in interest … may raise and may appear and may be heard on any issue in a case under [Chapter 11],' does not confer standing to appeal."); *Greater Se. Cmty. Hosp. Found. v. Potter*, 586 F.3d 1, 6 (D.C. Cir. 2009) ("On its face, however, [section 1109(b)] applies only to 'a case under this chapter,' that is, under Chapter 11 of the Bankruptcy Code, and Chapter 11 governs only proceedings in the bankruptcy court, not appeals therefrom. Consequently, [appellant's] standing in district court is governed by the rule … limiting bankruptcy appeals to 'persons aggrieved …'") (citations omitted); *In re PWS Holding Corp.*, 228 F.3d 224, 248-49 (3d Cir. 2000) (Bankruptcy Code section 1109(b) "confers broad standing at the trial level. However, "courts do not extend that provision to appellate standing….") (citing *Kane v Johns-Manville Corp.*, 843 F.2d 636, 641-42 (2d Cir. 1988)); *Cousins Int'l Food Corp. v. Vidal*, 565 B.R. 450, 459 (BAP 1st Cir. 2017) ("Qualifying as an interested party with standing to participate in bankruptcy court proceedings is not necessarily synonymous with being a being a 'person aggrieved' for appellate standing purposes."); *In re Salant Corp.*, 176 B.R. 131, 134 (S.D.N.Y. 1994) ("[A]lthough the Equity Committee is clearly a party in interest under section 1109(b) of the Bankruptcy Code, merely being a party in interest is insufficient to confer appellate standing.").

[47] *S. Pac. Trans. Co. v. Voluntary Purchasing Grp.*, 227 B.R. 788 (E.D. Tex. 1998).

*appellee*[48] despite being a party in interest in the bankruptcy case below. The *Southern Pacific* court properly applied the Fifth Circuit's "person aggrieved" test by ruling the creditors' committee had standing because the "pecuniary interests of the creditors' committee's members are adversely affected by entry of the order confirming [the plan]."[49] The court did not, as Appellant argues, conclude that section 1109(b) independently confers appellate standing. Bankruptcy Code section 1109(b) does not provide Appellant any basis for bankruptcy appellate standing, statutory or otherwise.

<blockquote>(iii) <strong><em>Appellant No Longer Holds Any Claims Against the Debtor and Cannot Rely on the Former Existence of Disallowed Claims as a Basis for Bankruptcy Standing</em></strong></blockquote>

Appellant's final argument asserting bankruptcy standing is that because it held disputed claims against the Debtor at the time it appealed the Settlement Approval Order, Appellant is still entitled to argue its appeal despite having lost all its claims. This argument is also incorrect. Even if the existence of Appellant's prior claims somehow made it a "person aggrieved," the disallowance of those claims

---

[48] *Id.* at 790. Unlike this Appeal, the debtor in *Southern Pacific* was the appellee defending the appeal and it was not clear to the *Southern Pacific* court whether appellant's threshold argument of appellee standing was even the proper inquiry under those circumstances. "Although the issue of standing is 'the threshold question in every federal case,'" it is not clear that appellant standing is the proper inquiry for the court in this case. Such issues typically arise only in the context of a party's standing to *take* an appeal (i.e. the right to be an appellant), not one's standing to oppose an appeal (i.e. the right to be an appellee). Indeed, courts are rarely (if ever) called upon to decide whether a party has standing to be an appellee." *Id.* (citation omitted).

[49] *Id.* at 791.

DOCS_SF:108263.21 36027/003

means they are no longer relevant to determining whether or not Appellant has standing to appeal the Settlement Approval Order. While it is true that standing is determined as of the time litigation begins, constitutional mootness and Article III's justiciability requirement place standing in a time frame, such that "[e]ven when an action presents a live case or controversy at the time of filing, subsequent developments … may moot the case."[50] The U.S. Supreme Court has described mootness as "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'"[51]

This Circuit, in addressing a bankruptcy appeal in which the appellant lost standing after the appeal began, held thus: "A controversy is mooted when there are no longer adverse parties with sufficient legal interests to maintain the litigation."[52] A mooted appeal must be dismissed because a "moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents."[53]

---

[50] *Midwest Media Prop. v. Symmes Twp.*, 503 F.3d 456, 460 (6th Cir. 2007) (citing *Hall v. Beals*, 396 U.S. 45, 48 (1969)).

[51] *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1996) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

[52] *Goldin*, 166 F.3d at 717 (citing *Chevron, U.S.A. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993)).

[53] *Id.* at 717-18 (citing *Hogan v. Miss. Univ. for Women*, 646 F.2d 1116, 1117 n.1 (5th Cir. 1981)).

This identical issue was recently litigated by this Appellant in an appeal brought by yet another Dondero-controlled entity. As Judge Scholer reasoned:

> The Court finds that Dugaboy is not "directly and adversely affected pecuniarily" by the Order as required to establish standing. *Coho*, 395 F.3d at 203. By withdrawing its remaining claims against Debtor, Dugaboy no longer has any pecuniary interest in the bankruptcy estate and therefore is not a "person aggrieved" by the Order. *Id.* …
>
> Further, even if Dugaboy did still have some claim to the estate, "[e]ven a claimant to a fund must show a realistic likelihood of injury in order to have standing." *Id.* There is no such likelihood here.[54]

All the claims Appellant possessed at the time this appeal began have been withdrawn with prejudice. Appellant's former claims cannot be used as a basis to argue that Appellant currently has bankruptcy standing; standing must exist at the commencement of litigation and throughout its existence. Appellant is therefore only left to argue that its contingent, unvested, subordinated 0.1866% trust interest as the basis for being a "person aggrieved." This is exactly the type of 'hypothetical or indirect injury'" that this Court has consistently found insufficient to confer standing for the reasons set forth above.[55]

## B.     The HCLOF Interests Provided Material Value to the Estate

Appellant argues that if this Court reverses the District Court and determines Appellant has standing to prosecute this appeal, it should remand the case to the District Court to address the merits. Appellee agrees. Nevertheless, Appellant argues

---

[54] *See Dugaboy,* 2022 U.S. Dist. LEXIS 155600, at *7-8.

[55] *Coho*, 395 F.3d. at 203 (quoting *Ergo Sci. v. Martin*, 73 F.3d 595, 597 (5th Cir. 1996)).

to this Court that the transfer of HarbourVest's HCLOF interests to a wholly owned and controlled Debtor subsidiary was improper because it placed the HCLOF interests outside bankruptcy court jurisdiction, allowing the Debtor to evade "reporting and accounting" of the value of such interests and eliminating any value to the Debtor.[56]

Appellant misstates the Bankruptcy Court's jurisdiction. A debtor's equity investments in subsidiaries are property of the estate under Bankruptcy Code section 541(a);[57] a debtor's ability to exercise control rights over a subsidiary also constitutes estate property.[58] The use of estate property requires compliance with Bankruptcy Code section 363.[59]

---

[56] Opening Brief at 30-31.

[57] *Reed v. Genter (In re Genter)*, 2021 Bankr. LEXIS 720, at *13-14 (Bankr. N.D. Tex. Mar. 22, 2021) ("Both bankruptcy law and Texas property law are clear that stock is a property interest that becomes property of the estate when a debtor files bankruptcy…. 'Stock is undoubtedly considered property of the stockholder; thus, the transfer of it is a transfer of an 'interest of the debtor in property'") (citation omitted; quoting *In re Wolf*, 595 B.R. 735, 777 (Bankr. N.D. Ill. 2018))); *In re Hutchison*, 2002 Bankr. LEXIS 2014, at *4 (Bankr. N.D. Tex. Jan. 18, 2002) (same).

[58] *Dugaboy*, 2022 U.S. Dist. LEXIS 172351, at *7-8 ("And a bankruptcy debtor's '[equity] interest, including its … governance rights,' constitutes 'property of the bankruptcy estate.' Thus, Highland rightly points out that 'it could not exercise its management and controls rights … without exercising control over property of its bankruptcy estate.'") (quoting *In re Thomas*, 2020 Bankr. LEXIS 1650, at *10 (Bankr. W.D. Tenn. May 8, 2020), and record on appeal). The Bankruptcy Court has exclusive jurisdiction over estate property under 28 U.S.C. § 1334(e)(1).

[59] *See* 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…."); 11 U.S.C. § 363(c)(1) ("[T]he trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."); *see also Dugaboy*, 2022 U.S. Dist. LEXIS 172351 at *7-8.

The value of the HCLOF interests was not affected because they were held in a wholly-owned Debtor subsidiary. It is axiomatic that an asset held in a wholly owned and controlled subsidiary represents dollar-for-dollar value to the subsidiary's parent—*i.e.*, Highland.[60] The value of the HCLOF interests was also included in the Debtor's projected distributable value to creditors produced in connection with confirmation of Highland's Plan in February 2021.[61]

## VI.    **CONCLUSION**

This Court should affirm the District Court Order dismissing this appeal of the Settlement Approval Order. Alternatively, if the Court reverses the District Court's ruling on Appellant's bankruptcy standing, it should remand the matter to the District Court to address the merits of the Settlement Approval Order.

---

[60] Under U.S. General Accounting Principles (FASB ASC Topic 810), a wholly-owned and controlled subsidiary requires consolidation by its parent. Therefore, on a consolidated basis, the parent would reflect the assets and liabilities of the subsidiary no differently than it would if they were held (or owed in the case of liabilities) by the parent directly.

[61] *In re Highland Cap. Mgmt., L.P.*, No. 19-34054-sgj11, Docket No. 1875-1 (Bankr. N.D. Tex. Feb. 1, 2021). Seery testified that the value of the HCLOF interests was included in Highland's projected creditor recoveries at the confirmation hearing. *Id.*, Docket No. 1894 at 128-129.

Date:  January 19, 2023

**HAYWARD PLLC**

*/s/Zachery Z Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

-and-

**PACHULSKI STANG ZIEHL &
JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           ikharasch@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com


*Counsel for the Appellee*

## **CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)**

1.     This document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(b) because, including footnotes and excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,418 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, typeface Times New Roman, 14-point type (12-point for footnotes).

3.     Any required privacy redactions have been made pursuant to Circuit Rule 25.2.13, the electronic submission is an exact copy of the paper submission, and this document has been scanned for viruses and is free of them.

*/s/ Zachery Z. Annable*
Attorney for Appellee
Dated: January 19, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2023, the foregoing Brief of Appellee was electronically filed using the appellate CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished via CM/ECF.

*/s/ Zachery Z. Annable*
Attorney for Appellee